# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CATHERINE D. LUZIER,

       Plaintiff,                     Case No. 08-cv-11635
                                         Hon. Gerald E. Rosen

v.

SEARS ROEBUCK & CO. and
JANE DOE, jointly and severally,

       Defendants
_____/

## OPINION AND ORDER
## GRANTING DEFENDANT SEARS ROEBUCK & CO.'S
## MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on     September 11, 2009

PRESENT:   Honorable Gerald E. Rosen
                    United States District Judge

## I. INTRODUCTION

Plaintiff Catherine D. Luzier commenced this suit in state court, asserting a premises liability claim against Defendant Sears Roebuck & Co. ("Sears") arising out of an April 15, 2006 incident in which she slipped and fell on spilled detergent at a Sears store in Roseville, Michigan. Sears removed the case to this Court on April 17, 2008, citing diversity of citizenship between the parties. See 28 U.S.C. § 1332(a).

Through the motion now pending before the Court, Sears seeks summary judgment

in its favor on Plaintiff's state-law negligence claim. In support of this motion, Sears argues that Plaintiff cannot establish that Sears owed her any legal duty because the allegedly dangerous condition was open and obvious. In response, Plaintiff contends that she has produced evidence that the dangerous condition was not readily discernible in the context of the surrounding circumstances.

Sears also filed a motion *in limine* to preclude Plaintiff's expert testimony. Sears argues that Plaintiff's expert testimony is not scientific, technical or other specialized knowledge that will assist the trier of fact. Plaintiff counters that the expert testimony is relevant to understanding issues of human perception and performance.

Having reviewed the parties' briefs and accompanying exhibits, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in the written record, and that oral argument would not aid the decisional process. Accordingly, the Court will decide Sears's motions "on the briefs." See Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.

## II. FACTUAL BACKGROUND

Shortly after 11:00 a.m. on Saturday, April 15, 2006, Plaintiff Catherine Luzier, a 57-year-old woman, slipped and fell on detergent spilled at a Sears store in Roseville, Michigan. The facts leading up to and surrounding Plaintiff's fall are largely undisputed.

On the day of the accident, Plaintiff and her husband, Gary Luzier, went to the Macomb Mall Sears store to purchase paint. After looking at paint swatches, the couple split up to find a sales representative to help them. Gary Luzier went to the lawn and

garden department where he had previously noticed sales personnel, while Plaintiff walked towards the main aisle where the paint department cash register was located.

Around the same time, Darlene Bachmann, a Sears salesperson, was in the process of cleaning up spilled detergent in the main aisle. Ms. Bachmann had been assisting a prospective customer over the phone, when she inadvertently knocked over a 200 ounce bottle of liquid laundry detergent from a display set up on the gray-tiled floor immediately next to the paint department cash register. The bottle's cap "popped off" when the bottle fell to the floor and about three-quarters of the bottle's contents spilled out. The spill spread to both the gray tiles immediately near the cash register and the cream colored tiles in the main aisle. Ms. Bachmann set the bottle upright to stop further spilling, then immediately went to a janitorial room located in the paint department to obtain a yellow "wet floor" warning sign, a mop and a janitorial bucket. She returned to the spill, placed the "wet floor" sign near the spill in the main aisle and began cleaning up the detergent.[1] As Ms. Bachmann mopped up the liquid, she rinsed the detergent from the mop in the janitorial bucket. Because of the volume of soap on the floor, she eventually decided to

---

[1] The record is unclear as to how close the "wet floor" sign was to the actual spill. There is no photographic evidence of the sign's initial placement because, before investigation photographs were taken, the sign was moved by Sharon Steeland, a Sears employee, from the location where Ms. Bachmann had placed it in order to block traffic while Plaintiff was waiting for EMS. In her interrogatory answers, Plaintiff stated that the sign was more than five feet from the spill when she fell. At her deposition, Plaintiff placed the sign approximately ten feet to her left as she entered the main aisle. Her husband testified that the sign was ten to thirteen feet from the spill. By contrast, Ms. Bachmann testified that she placed the sign "by the soap." (Bachmann Dep. 30:24-31:1.)

replace the soapy liquid in the bucket with fresh water.[2]  She left the area of the spill to return to the janitorial room to empty the bucket, add fresh water and rinse the mop.

While Ms. Bachmann was away, Plaintiff testified that she approached the end of the product display in the paint department and was entering the main aisle, when she saw the "wet floor" sign to her left.  Without looking down—Plaintiff later testified that she "paid no attention to [the sign] because it was so far away"—she turned away from the sign to approach the cash register.  (Pl. Dep. 81:5-11.)[3]  Her legs immediately slid out from underneath her in opposite directions.  She landed first on her right knee and then on her buttocks, before bracing herself with her hands and avoiding hitting her head.  There were no eye witnesses to Plaintiff's fall, and the fall was not caught on any of Sears' surveillance cameras.

Following the accident, Plaintiff stayed on the floor and called to her husband.  She remained there until EMS arrived.  While on the floor, Plaintiff testified to feeling the slippery substance on the ground.  Plaintiff and her husband described the substance as clear, but Sears employees who arrived in the aisle after the accident testified that they could see the spill from as much as eight to ten feet away and that they remembered it as having a pink color.  (See Steeland Dep. 17:6-10; Gibson Dep. 22:19-21; Walker Dep.

---

[2] Ultimately, after the accident, Ms. Bachmann refilled the bucket with clean water approximately three more times in order to finish cleaning the spill.

[3] Plaintiff looked straight ahead towards the register, but not down at the floor, because she later explained that she has "great peripheral vision." (Pl. Dep. 109:21-22.)

15:6-22.) Color Polaroid photos taken shortly after the accident by a Sears security employee show that Plaintiff's left pant leg, the seat and the right pant leg were soaked. The photos show only a faint outline of the spill. Plaintiff testified that, once on the floor, she could see that the spill was approximately four feet in diameter.

As a result of the accident, Plaintiff claims to have suffered injuries to her right knee, both hips, and the muscles of her left posterior and upper leg. She did not break any bones, nor did she tear any muscles or ligaments. She has, however, pursued rehabilitative treatment on an out-patient basis and takes over-the-counter pain medication. Her physicians have advised her to "do what she can" but no doctor has placed Plaintiff under any medical restrictions as a result of this accident. (Pl. Dep. 46:7-20; 161:4-7.) Plaintiff, a high school graduate with several years of college education, was employed on a part-time basis as a program coordinator for continuing education at Macomb County Community College at the time of the accident. She has not worked since the day of her accident, allegedly because of her injuries.

### III.  DISCUSSION

**A.    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Sears moves for summary judgment on two grounds. First, it asserts that Plaintiff cannot establish that Sears owed her any legal duty. Second, Sears argues that, while a Sears employee caused the spill, Sears was not negligent in handling it as a matter of law. For the reasons set forth below, the Court concludes that there are no issues of genuine fact and summary judgment is warranted.

**1.     Standards Applicable to Motions for Summary Judgment**

Summary judgment is proper "if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Three 1986 Supreme Court cases—<u>Matsushita Electrical Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574 (1986); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)—ushered in a "new era" in the standards of review for a summary judgment motion. These cases, in the aggregate, lowered the movant's burden on a summary judgment motion. According to the <u>Celotex</u> Court,

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof.

<u>Celotex</u>, 477 U.S. at 322.

After reviewing the above trilogy, the Sixth Circuit established a series of principles to be applied to motions for summary judgment. They are summarized as follows:

- The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or

> her case.
>
> • The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."
>
> • The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.
>
> • The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is plausible.

Betkerur v. Aultman Hospital Association, 78 F.3d 1079, 1087 (6th Cir. 1996). See also, Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989). The Court will apply the foregoing standards in deciding Sears' Motion for Summary Judgment in this case.

### 2. Premises Liability

A premises liability claim requires that a plaintiff prove the following four elements: (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the defendant's breach of its duty was a proximate cause of the plaintiff's injuries, and (4) the plaintiff suffered damages. Berryman v. K Mart Corp., 193 Mich. App. 88, 91-92, 483 N.W.2d 642 (1992). Whether a defendant owed a plaintiff a duty of care is a threshold question of law for the trial court to decide. Riddle v. McLouth Steel Products Corp., 440 Mich. 85, 95, 485 N.W.2d 676 (1992).

In Michigan, a property owner's duty to a person who enters the premises depends on the visitor's status. Stitt v. Holland Abundant Life Fellowship, 462 Mich. 591, 596, 614 N.W.2d 88, 91 (2000). An invitee is "a person who enters upon the land of another upon an invitation which carries with it an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises, and make [it] safe for [the invitee's] reception." 614 N.W.2d at 92.

> The landowner has a duty of care, not only to warn the invitee of any known dangers, but the additional obligation to also make the premises safe, which requires the landowner to inspect the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards.

Id. As a general rule, this duty does not extend to protecting an invitee from open and obvious dangers. Lugo v. Ameritech Corp., Inc., 464 Mich. 512, 516, 629 N.W.2d 384, 386 (2001). The open and obvious doctrine is not an "exception" to the duty generally owed to invitees, but rather an integral part of the definition of that duty. Id. Where special aspects of a condition make even an open and obvious risk unreasonably dangerous, the property owner has a duty to undertake reasonable precautions to protect invitees from that risk. Id. Finally, the test for determining whether a condition is open and obvious is whether "an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection." Novotney v. Burger King Corp., 198 Mich. App. 470, 475, 499 N.W.2d 379, 381 (1993).

    **3.**    **Defendant Did Not Owe Plaintiff a Duty of Care Beyond Taking Reasonable Measures Within a Reasonable Time After the Spill to Diminish the Hazard of Injury to Invitees.**

In this case, Plaintiff was an invitee of Sears because she entered the premises for a commercial purpose. In addition, the parties do not dispute that the condition—spilled liquid detergent—was created by a Sears employee. Thus, Sears had actual notice of the condition and a duty to take necessary remedial action in a timely manner and to warn of any discovered hazards. See Stitt, 614 N.W.2d at 92. Sears did this. It sought to address the potentially dangerous condition when Ms. Bachmann immediately set the detergent bottle upright and left the area to obtain a mop, bucket and wet floor sign. She returned, set up the wet floor sign—a warning to customers or other employees—and began mopping up the spill. Based on the evidence in the record, a rational juror could not find that Sears failed to fulfill its duty of care to invitees.

Plaintiff argues that, despite its initial efforts, Sears was negligent in demarcating the spill and in possibly exacerbating the problem by using a wet mop. Plaintiff cites no case law, and this Court has found none, to support her theory of a heightened duty to warn beyond the actions unquestionably taken by Sears here: setting up a wet floor sign in an open, highly-trafficked area and beginning to mop up the spill. As a general matter, Michigan courts have consistently held that a "storekeeper is not an insurer of the safety of his customers." Winfrey v. S.S. Kresge, 6 Mich. App. 504, 507, 149 N.W.2d 470, 471 (1967). Though the Michigan Supreme Court has never addressed the issue of what constitutes sufficient demarcation around a slippery floor, several unpublished Michigan Court of Appeals opinions suggest that even where a wet floor sign is not immediately

visible to the plaintiff, its existence in an open area is objectively sufficient to warn invitees of a potential slipping hazard and weighs in favor of an "open and obvious" finding. See Maness v. Carleton Pharmacy, L.L.C., No. 271581, 271976, 2007 WL 1575255, at *4 (Mich. Ct. App. May 31, 2007), *vacated in part*, 480 Mich. 1100, 745 N.W.2d 111 (2008); Hickey v. Adler's Foodtown, Inc., No. 236036, 2003 WL 1689620, at *5 (Mich. Ct. App. Mar. 27, 2003).

Here, although the parties dispute the distance between the wet floor sign and the actual detergent, as well as the visibility of the puddle, no reasonable jury could conclude that Sears failed to warn invitees of the condition. Sears clearly set up the sign in the main aisle. The sign was approximately five to ten feet from the spill, which itself extended at least four feet in diameter. Plaintiff had an unobstructed view of the wet floor sign and testified that she saw the sign before taking several steps into the main aisle. She understood the sign to mean that there was a spill on the ground or that the floor was potentially slippery, though she believed the spill to be farther away from where she was standing. In light of these facts, the Court concludes that Plaintiff cannot sustain a claim of negligence against Sears, where the duty of care mandates only that Sears warn the invitee of known, potentially hazardous conditions and timely take any necessary steps to repair or address those conditions. There is nothing in the record to indicate that Sears negligently, carelessly or recklessly failed to take reasonable measures within a reasonable time after the spill to diminish the hazard of injury to invitees, even if questions may remain as to the wisdom of using a wet mop on liquid detergent. Moreover, the claim that

Sears could have warned better or more clearly is conjectural at best: Plaintiff was not looking at the ground when she fell, though she was aware of the wet floor sign, and she has provided no admissible evidence that additional warning signs would have prevented her fall. Under these circumstances, to impose liability on Sears would effectively penalize it for taking steps to address a hazard in its store.

Further, while the parties dispute how discernible the detergent on the shiny tile floor actually was, the Court finds that a Michigan court confronted with the evidence in this case would likely conclude that the condition was open and obvious as a matter of law. In multiple unpublished opinions, Michigan courts have readily concluded that a puddle or accumulation of water is an open and obvious condition which does not give rise to premises liability. See, e.g., Brownlee v. General Motors Corp., No. 252867, 2005 WL 2086139 (Mich. Ct. App. Aug. 30, 2005); Bukowski v. Kendall, No. 251420, 2005 WL 563343 (Mich. Ct. App. Mar. 10, 2005); Pllumbaj v. Consolidated Management, Inc., No. 248295, 2004 WL 2451940 (Mich. Ct. App. Nov. 02, 2004). Indeed, ordinary puddles generally are discoverable upon casual inspection. For example, in Hickey v. Adler's Foodtown, Inc., No. 236036, 2003 WL 1689620 (Mich. Ct. App. Mar. 27, 2003), the court found that a grocery store could not be held liable where one of its customers slipped and fell on a five-foot in diameter puddle of water while shopping. The court concluded that the hazardous condition was open and obvious, despite the plaintiff's argument that the shiny floor tiles made the puddle invisible. Id. at *5. Even though an employee of the defendant store admitted that the area was slick after having been freshly mopped, the

court found that there was no evidence that the plaintiff's view of the floor was obstructed prior to her fall.  Id.  Moreover, the fact that the plaintiff had not seen a nearby warning cone and bucket was not relevant to the inquiry of whether the puddle was objectively noticeable.  Id.  The court held that "given its size, we believe that 'an average user with ordinary intelligence' would be 'able to discover' such an accumulation 'upon casual inspection.'"  Id.

In this case, even though Plaintiff testified that she did not see the spill until she was on the ground with soaked clothes, and her husband similarly testified he did not notice the liquid until he was squatting near his wife to assist her, the evidence indicates that the puddle was at least four feet in diameter and within five to ten feet of the wet floor sign.  These facts in combination dictate a finding of an open and obvious condition, in light of the relevant Michigan case law.  Clearly Hickey is not binding precedent.  See Michigan Court Rule 7.215(c)(1).  Nevertheless, it is instructive in guiding this Court's finding that an average user with ordinary intelligence would be able to discover such a large spill upon casual inspection, particularly where a nearby warning sign alerted shoppers to its presence.

Finally, there were no special aspects that would make the open and obvious condition unreasonably dangerous.  Special aspects are circumstances that create a "uniquely high likelihood of harm or severity of harm."  Lugo, 629 N.W.2d at 387-88.  In Lugo, the Michigan Supreme Court explained how special aspects might differentiate a risk from an ordinary, everyday occurrence:

> An illustration of such a situation might involve, for example, a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water. In other words, the open and obvious condition is *effectively unavoidable*. Similarly, an open and obvious condition might be unreasonably dangerous because of special aspects that impose an unreasonably high risk of severe harm. To use another example, consider an unguarded thirty foot deep pit in the middle of a parking lot. The condition might well be open and obvious, and one would likely be capable of avoiding the danger. Nevertheless, this situation would present *such a substantial risk of death or severe injury to one who fell in the pit that it would be unreasonably dangerous to maintain the condition*, at least absent reasonable warnings or other remedial measures being taken.

Id. at 387 (emphasis added). Plaintiff has failed to show how placing a wet floor sign several feet from the spill or using a wet mop to sop up the detergent created "special aspects" as defined in Lugo. Far from being an unavoidable hazard blocking an exit or a gaping hole, the spill in this case presented only the risk of a potential fall to the ground. Like uneven steps or a pothole in a parking lot, a spill, in the process of being mopped up by a store employee, is an "'everyday occurrence' that ordinarily should be observed by a reasonably prudent person." Id. at 389; see also Bertrand v. Alan Ford, Inc., 449 Mich. 606, 609, 537 N.W.2d 185 (1995). Ultimately, the condition was open and obvious and not unreasonably dangerous.

## V. CONCLUSION

For all of the foregoing reasons,

   IT IS HEREBY ORDERED that Sears' November 28, 2008 Motion for Summary Judgment **[Dkt. # 13]** is GRANTED. In light of this ruling, IT IS FURTHER ORDERED

that Sears' November 28, 2008 Motion in Limine to Preclude Expert Testimony in Connection with Sears' Motion for Summary Judgment **[Dkt. #14]** is DENIED AS MOOT.

    Let judgment be entered accordingly.


                          s/Gerald E. Rosen
                          Gerald E. Rosen, Chief Judge
                          Chief, United States District Court


Dated: September 11, 2009



I hereby certify that a copy of the foregoing document was served upon counsel of record on September 12, 2009, by electronic and/or ordinary mail.

                          s/Ruth A. Brissaud
                          Case Manager
                          (313) 234-5137